Packaging v. Cold Chain As I said, this is a factual dispute, Your Honor. And the judge decided your question on summary judgment. And that's one of the reasons why we're here before you. Again, not to be cute, Your Honor, but that's a major problem. As is the problem with Claim 20, which I'd like to address. So I think we've clearly got a judicial finding of fact in the context of a summary judgment. There are two claim terms that are at issue with respect to Claim 20. Walls that substantially engage the product and the cavity, and thereby substantially minimizing the airspace around the product. Now, the word substantially was defined by the court as largely but not necessarily wholly. It was not defined, as defendants wished it, to reduce to the smallest possible amount. It was defined as largely but not necessarily wholly. And when we get to substantially minimize, which I'll touch on in a minute, there, not only do we have substantially, but we have the word minimize. But because of the cutouts here, isn't it going to be impossible for your cooler top to ever minimize the airspaces around the product? Haven't they designed around pretty effectively? They've made a lot of airspace around the product. They're taking themselves out of the substantially minimizing airspaces around the product limitation. I don't believe so at all, Your Honor. Well, how do you get around that? Well, the fact is, look for, for example, at JA 471 through 73, which shows these three containers, these small, medium, and large, packed with products. And I might add, this product was placed inside the product in accordance with conventional industry standards, about which there's a lot of testimony. These shipping containers are not made to, as the phraseology goes, ship air. They're made to ship product. In fact, there are even computer programs designed to help the packers of these shipping containers optimize the box configurations that go inside them. And when you optimize them, you get something such as shown here in JA 472, Your Honor. I'm holding that up. I'm looking at it. JA 472. You can see that that container is practically filled. There are some small spaces around the box. When you put the top on, you're still going to have substantial airspaces around the product, due both to the cutouts and the larger coolant pocket, which is not completely filled by the coolant gel. Well, the coolant pocket is not a part of the cavity that holds the product.  Where the airspace is minimized for purposes of Claim 20 is the product cavity, not the coolant cavity. So we're not talking about whatever space may be left in the coolant cavity. We're only focused on the product cavity. I might also add that in Claim 20, we're not talking about covers. We're only talking about the four sidewalls and the bottom. And that is, as I've put to you, there is substantial reduction of the airspace. That is a fact, Your Honor. That's a fact. It's a fact that the experts below on behalf of EnviroPooler testified to. They indicated that based on their experience of design and packaging materials, what was done here was an attempt to minimize the airspace. That was done slightly differently than in the preferred embodiment of a patent, but it was nonetheless done. The application of this patent in Column 4, Lines 29 to 34, talks about the product cavity having a shape that allows the product, et cetera, et cetera, so as to substantially minimize airspace around the product. Correct. But it seems to me that the accused has a shape intended to do precisely the opposite, and namely all of those ribs are intended to provide airspace, no matter how big the product is. I agree those ribs are there intentionally, Your Honor, and there's an airspace there intentionally, but there's an airspace intentionally in Claim 20. That substantially minimizing airspace was written that way for a reason. And the reason is that in the real world when these products are used, you've got to be able to insert the product boxes and take them back out. So of necessity, you need some amount of airspace around that product. If you didn't need that airspace, the claim could have been written substantially eliminating airspace, but that's not how it was written. It was written to substantially minimize the airspace, and I put it to the court. There was a reason for that. That reason was testified to below. That is a factual dispute. It is not the province of the court to make that decision. If we look at what the court said, actually, I think that illustrates my point as well, Your Honor. I'm reading from the court's summary judgment determination, J.A. 18, where the court says the ribs and the standoff pads guarantee a minimum quarter-inch layer of airspace around the product at all times. This cannot be said to substantially minimize airspace around the product. And there's a footnote, and it's the footnote of the greatest interest here, Your Honor. The footnote says, although the court recognizes the potential line-drawing problem here, it need not consider whether smaller ribs and standoff pads would be sufficient to avoid infringement of this claim. For purposes of the containers at issue in this action, a quarter-inch airspace is enough. Well, Your Honor, I submit to you that's judicial fact-finding on the part of the judge. That's the judge saying, oh, I think this is enough. That's the judge saying, I'm not even going to take into account whether smaller ribs would work. And by the way, we have a tolerance problem here, Your Honor. The tolerance on this product is one-eighth inch in either direction. So this airspace around here, and it's not all the way around the product, it's only in between the ribs that we're talking about, could be as small as one-eighth of an inch. And the judge did not address that tolerance problem. Your Honor, can I save your rebuttal time for a moment? Yes, Your Honor. Mr. Schwartz. May it please the court. We're talking here about the accused products and their dimensions. That's uniquely a question of fact, isn't it? That's correct, and the district court didn't pay any attention to that. This was the district court's decision. But doesn't he have to avoid any fact-finding? And he did. What he did was pure claim construction. That's what this is about. What the district court said is that the patented device consists of a container body, a cover, and there's also packaging around it. That's a relevant purpose of this. The container body has two distinct cavities, a coolant cavity for the container, a coolant cavity for the product. They're separate. Above that is what is referred to alternatively in the patent as either the open top or the open end. They're identical. It's figured 18 in the drawings. The cover is an insulated cover, has extensions protruding down from the insulated protrusions, and what this court has already found is that the patent requires that those protrusions must invade, descend into the coolant cavity. To meet the slightly engaging requirement. Yes, and there's other language in both claims 1 and 9 that require it to descend into because the coolant cavity must be filled by a combination of the coolant and the projection. The projection cavity is slightly engaging in 20, right? That's correct. That only has to do with the cover. So what the district court said was claim construction. You've got two distinct cavities there. The patent in column 4, lines 24 to 27 starts off defining what the product cavity is, and that's the key. You start with the product cavity. So it's J37. It says the insulated body has four sidewalls, a bottom wall, and an open top defining a product cavity. That's key. The product cavity is defined three sides by the walls. You've got the bottom, and then the top, the upper level of the product cavity, is defined by the open end, the open top. What that means is the space where we're talking here is dividing empty space, whether it's a cavity, product cavity. What the patent says is the product cavity ends at the top of the wall, and that's the open end. That open end is the top of the product cavity. It's also the bottom level of the open end, and that extends across the entire container. Then you go on to define what is the coolant cavity, and the coolant cavity is defined. So how do you accommodate the cutouts in those definitions? If there were cutouts in claims 1 and 9, but there aren't. The cutouts only in— No, they're in the accused devices. The walls are cut out, and so there's recess there in what would otherwise be the top of the product container. Well, actually, the product cavity goes up to, if you look on, I guess it was JA100? JA—yes, it is 100, or 99. 99's a clearer picture. Okay. On the uppermost wall, that wall, which doesn't go all the way to the top of the container, is the top, is the wall of the product cavity. There are four walls around that product, two of which are higher than the other two. They are cutouts. The product cavity goes to the top of the tallest of those walls, and that's where the open top, the open end starts, and there's a plane that goes across the whole container. That's where the open top begins. It's also where the product cavity ends. It's also where the cooling cavity ends, because the cooling cavity is defined as extending downward from the open top, and that's what the district court said. You have two distinct cavities, the product cavity and the cooling cavity, and above them a shared space. That's the open end and open top. Now you're saying that each of these cavities has to have four walls, four side walls, and it's not enough to have three walls around the cavity. You have to have four walls around the cavity, and that's why for the cooling cavity, the top of the cavity stops at the top of the shortest wall. It stops at the highest wall of the product cavity, because the product cavity is defined as the uppermost boundary of the product cavity is the beginning of the open end, and that open end is just space, just like the cavity is just space. And that open end, that boundary of the product cavity, defines not only the product cavity, it defines the top boundary of the cooling cavity. Everything above that is shared open space. You then put the cover on, and the cover goes into the open space. It doesn't go, certainly can't go below, and no one argues that it does, go below the product cavity, uppermost wall of the product cavity. It stops above that. It fills space in the open end, the open top. It doesn't go into the product cavity, it doesn't go into the cooling cavity, because it doesn't go lower than the product cavity. When the lid is put on, it rests on the larger end pieces of the product cavity, correct? Correct. So that there is shared, there's an open space from one side of the container over to the other side of the container, and that open space encompasses the first coolant cavity, the product cavity, and then the second coolant cavity, correct? It goes over all three, yes. Yes, and that space is the shared open space, the open end, the top. The cover does descend into the open top, doesn't go down below that. You say, well, why can't the cooling cavity go higher, and you just pile in the cooling? Because if you did, if the cooling cavity went higher than the product cavity, coolant, like dry ice chips, could just fall into the product cavity. Or, if you have a tall, frozen coolant, as environmental coolants, as Tony was saying, it could tip, because there's no wall, there's a cutout, and it would touch the product, and that would be exactly against the teaching of the patent. If you look at JA36... Where does the patent require that the top extend down into the product cavity? Oh, it doesn't. It never mentions going into the product cavity. It talks about going into the cooling cavity, and this doesn't go into the cooling cavity. It goes into the open end. You're saying that the accused products, if there's no dispute, in fact, the accused products do not substantially minimize air spaces around the product. That's true, because... Well, it doesn't do that, because it doesn't do that at all, but it doesn't do it in conjunction with anything from the cover, because the cover does not invade the cooling cavities. So that substantially minimizing air space requirement, in your view, is not met when the lid is on for two reasons. One, because of the ribs that are around the product cavity. That's true. And two, because of the air space that is above all three cavities. Is that your...? No, I would say the air space isn't minimized because of the ribs, because of those pads on both the bottom of the cavity and on the lid, but it's also... In claims 1 and 9, the reduction has to be a combination of the rejection from the cover and the cooling. The projection from the cover never goes into the cooling cavity, and that was the basis for the courts affirming the lower case. That's 1 and 9. We're looking at 20. Okay, 20. That's the problem. Okay, 20 is another one. 20 also has nothing to do with fact. The judge didn't resolve fact. He did claim construction. Contrary to what EnviroPooler's attorney said, there actually are three phrases that have to be interpreted in claim 20. The claim says, in operant part, we're looking at claim 16. 20 depends on... Yes. Okay, 16. An insulated body having a plurality of walls defining a product cavity, obviously. But then, the plurality of walls... And here's the first phrase that has to be construed. Being adapted to. Second phrase. Substantially engage a product in the product cavity. Third, substantially minimizing air space. EnviroPooler's attorney conveniently avoids the adapted to language. Most cases do. Patent prosecutors throw that adapted to language in there to avoid means plus function clauses. And they try to say it doesn't mean anything. But in this case, it does. Adapted to means, if you look in the dictionary, modify, meant to conform, meant to fit, meant to fit. It has a meaning. You can't ignore that. In this case, this container was meant to have product walls that held the product securely. And how did it do that? It also minimized the air space it's about. You know, patent terms are supposed to have meaning so that people who read it know what to avoid. Well, we still have Mr. Brooks' argument. I have not heard you address it. Okay. He says there is some minimization of the air spaces around the product. When you put the top down, it does enter. And therefore, didn't the district court engage in backfinding when it said, although there's minimizing, what I'm going to say is a matter of law, it's not substantial minimization. Okay. First, Claim 20 and Claim 16 don't have to do with the top or cover. It's just that's Claims 1 and 9. But Claim 20 and 16 don't have to do with the cover. What the district court said was, I'm going to assume that this container secures a product. Well, if you assume that it secures, everyone, it's uncontested, this was constructed with a specific objective not to secure the product. If you're going to ignore the words adapted to it, say, that doesn't have any meaning. And you say, well, it's capable of securing it, even though this doesn't. So that doesn't have any meaning. The problem with your argument there is it may be adapted to fit some products and not others, and we're back into fact-finding, aren't we? No. If you get a product that fits right into the cavity, it is adapted to fit it. But in this particular case, this was... And so you had an infringement in some instances and not in other instances, and that would require fact-finding to determine how do you get around it. I think that if you say that you could always find something to fit, the words have no meaning. If this was star-shaped and you put a rectangular box in the middle, would it fit? No, but you could find a box that was star-shaped and stick it in. Yeah, you could always find it. And you would have infringement at that point. Right. But that's not the case here. This was a product made specifically, offered, it was never sold. It was an offer from a specific request by Amgen for one specific size product. This wasn't for anything else. You can always find stuff to shove in, cram in, and fill any opening. That's what they've done. What the district court said was, I'm going to assume it's capable of holding. If you do that, you ignore the meaning of the words. But then they said is, but when you have these ribs on there and you have the little plates on the bottom and on the cover that descend in that maintain space, as a matter of law, that doesn't minimize air space. He talked about tolerances. Yeah, if there's an eighth of an inch tolerance, there would have to be an eighth of an inch off of the rib in addition to the space. It wouldn't go in between the ribs. The ribs and the pads below and above maintain air space. That's not minimizing air space. When we're deciding whether assembly judgment of non-infringement was properly granted with respect to Claim 20, which depends on 16, is it the case that we have to look at simply your container but not your container with your top cover on? Because earlier when I asked you the question about what about the space that would be common to all three places, do we just look at the container without the top on it, engaging whether there's been proper assembly judgment of non-infringement for Claim 20? I think you don't look at the top, per se, but you look to see if the configuration of the accused device minimizes the air space all the way around the product. The accused device being the container absent the cover. No, the accused device has a cover. No, but with Claim 16 and 20, there's no cover. That's true, but it does talk about minimizing the air space around. Oh, no, I agree. In other words, we have to look at whether there is a minimizing of air space in the absence of a cover. I think that's probably correct. Anything further, Mr. Schwartz? No, Your Honor. Thank you. Mr. Brooks. Thank you, Your Honor. A couple of brief points. First of all, in answer to the question you posed to Colchins Counsel, District Court did look to dimensions here in deciding its summary judgment motion. It looked to the quarter-inch space around the packaging inside the product cavity. What it didn't do, though, in making a blanket determination of infringement is gauge what that quarter-inch meant relative to all three container sizes. We've got containers that move from 4x7 all the way up to 8x13. The cubic inch differential there is almost four times, and there was no determination or attempt made to figure out whether an eighth of an inch in a small container was not substantial, well, I should say didn't create substantial minimizing, but might have in a larger container. And that just points out the larger problem here is that there was, in fact, fact-finding. That's what the District Court did. I want to add two other quick points. Again, we're minimizing air spaces here, minimizing them, not eliminating air space. That's a purposeful thing to do, to minimize the air space. And as I indicated in my earlier argument, Your Honors, the reason for doing that is it's industry standard to leave a little bit of space around any product packaging inside a product cavity so that you can pull product out. That's understood. There was testimony on the record that that's industry standard. And speaking of industry standard, I'd like to close with my last point, Your Honors. And that is that this issue of what substantially minimizing means really is an expert issue. What is substantial? It's how it would be understood in the industry. The Court concluded in its view that there was not substantially minimizing. We analogized a case such as the VIRB case, quoted on page 10 and 11 of our reply brief, Your Honors, that case in talking about whether the word substantial is indefinite or not, which is a corollary here that wasn't raised down below, indicates that it's well established that when the term substantially serves reasonably to describe a subject matter so that its meaning and scope would be understood by persons in the field of the invention, it is not indefinite. And I put to you the analogy here is overwhelming. We had an expert down below who has designed these kind of cases and took a look at the big containers from cold chain and said, in my opinion, what happened here was a substantial minimization of airspace. It was an attempt to substantially minimize. And I think if Your Honors go back and look at JA 471 through 473, you'll see the visual evidence is rather overpowering of that. Roberts. Thank you, Mr. Brooks. Thank you, Mr. Thomas. Please go ahead.